IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| S.G. as guardian of H.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-2078-JAR-ADM |
| v. ) | |
| ) | |
| SHAWNEE MISSION UNIFIED ) | |
| SCHOOL DISTRICT NO. 512, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an elementary school abuse case that plaintiff S.G. brought on behalf of her minor daughter, H.C. (collectively, "S.G." or "Plaintiff"), against defendant Shawnee Mission Unified School District No. 512 ("SMSD") and certain of its administrators and personnel arising from an incident in which a teacher at Bluejacket-Flint Elementary School ("Bluejacket-Flint") physically assaulted H.C. Plaintiff dismissed her claims against the individual defendants, so her only remaining claims are failure-to-train and failure-to-supervise claims against the school district itself. Discovery is now complete. During the process of drafting the final pretrial order, a dispute arose between the parties about whether certain aspects of Plaintiff's claims are properly in the case such that the court should include them in the pretrial order. In order to resolve these disputes, the court ordered the parties to file the cross-motions that are now before the court: (1) Plaintiff's Motion for Leave to Amend the Complaint and Pretrial Order to Conform to the Evidence Discussed Throughout Discovery, and (2) Defendant's Motion Objecting to Plaintiff's Inclusion of Certain Contentions and Claims in the Pretrial Order. (ECF 97, 102.) As discussed below, S.G.'s motion is denied and SMSD's motion is granted in part and denied in part. Specifically, the court will not include contentions in the pretrial order about SMSD's failure to implement or

1

train staff on H.C.'s IEP and will preclude S.G. from pursuing this theory as grounds to support her failure-to-train claims, but the court will include contentions in the pretrial order about SMSD's alleged failure to supervise H.C.

## I.     Background

The parties largely agree on the material facts underlying this case. When H.C. was in kindergarten, she transferred from a different school district to SMSD. On February 6, 2019, she began attending school at Bluejacket-Flint. Her classroom teacher was Crystal Smith ("Smith"). On February 21, H.C. went with her class to the library, where Sheryl Cantwell ("Cantwell") was the librarian. When the library period was over, Smith returned to the library to collect her students. H.C. became upset and hid in a bookshelf. Smith physically removed H.C. from the bookshelf and kicked her. H.C. was then taken to the classroom of a resource teacher, Kaitlin Barnard ("Barnard"). After H.C. calmed down, Barnard took H.C. back to Smith's classroom. No one at Bluejacket-Flint told H.C.'s parents about the incident. Instead, her parents found out about the abuse when S.G. picked up H.C. from school that day, and H.C. told her about it. S.G. then went to the school to try to find out what happened. After S.G. spoke with school staff, they reviewed a video of the incident. SMSD investigated further, and ultimately terminated Smith's employment because of the abuse.

On January 28, 2020, S.G. filed this action in Johnson County District Court against SMSD; Heather Ousley, the President of the SMSD Board of Education; Teddi Pendland, the Principal at Bluejacket-Flint; and Smith. (ECF 1-1.) In Count 1, S.G. asserts a claim against Smith arising from the assault itself. Her other claims center around the defendants' failure to follow the SMSD's emergency safety intervention policy, which plaintiff describes as follows:

> District Policy "GAAF" (Emergency Safety Intervention) identifies
> when an intervention can take place and how it is to be managed.

2

> The policy demands all staff members be trained consistent with nationally recognized training programs regarding the use of positive behavioral strategies, de-escalation techniques, and prevention techniques. GAAF also mandates parent communication and almost immediate documentation.

(*Id.* ¶ 50-62, 64.)[1]  Count II asserts a claim against the SMSD pursuant to 42 U.S.C. § 1983 for denying H.C.'s liberty interest in bodily integrity under the 14th Amendment.  This claim is based on SMSD's alleged failure "to adequately train employees on the proper handling of events that require de-escalation or verbal rather than physical assistance in violation of [SMSD]'s own policies."  (*Id.* ¶ 83.)  Count III asserts a Kansas common-law negligence claim against SMSD and Pendland.  This claim is based on SMSD and Pendland's alleged failure "to adequately train and supervise teachers" and failure to "train Smith on the proper handling and reporting of student care and de-escalation in intervention situations," which gave Smith "free reign to assault H.C. while it was completely ignored by staff, including Pendland, until S.G. demanded answers."  (*Id.* ¶¶ 90-92.)  Count IV asserts a negligent hiring claim against SMSD and Pendland for hiring Smith despite knowing her prior employer would not have re-hired her.  (*Id.* ¶¶ 12-14, 96.)

Defendants SMSD, Ousley, and Pendland removed this action to federal court.  (ECF 1.)  After defendants Ousley and Pendland filed motions to dismiss, S.G. voluntarily dismissed her claims against them.  (ECF 20.)  The court conducted a scheduling conference on May 27, 2020, and initially stayed the case pending resolution of a criminal case in Johnson County District Court against Smith for her abuse of H.C.  (ECF 26.)  After a several-month delay, that case was resolved by Smith pleading guilty to battery.  On February 8, 2021, the court entered a scheduling order setting a deadline of March 15 for any motions to amend the pleadings and a deadline of August

---

[1] Plaintiff's complaint also mentioned the school district's child abuse investigation and anti-bullying policies (*id.* ¶¶ 65-66), but her claims against the SMSD and its administrators (other than Smith) were not based on these policies.

31 to complete discovery.  (ECF 34, at 2.)   When the parties were not on pace to complete discovery by August 31, the court extended the discovery deadline approximately sixty days, to November 1.  (ECF 48-49.)  On October 1, the court denied S.G.'s motion to amend her complaint to add assault and battery claims against Smith based on her guilty plea for battery in the Johnson County criminal case.  (ECF 52, 58, 60.)  The court denied the motion as untimely because Smith had entered her guilty plea on December 3, 2020, which was well before the scheduling conference on February 8, 2021, and the deadline for motions to amend the pleadings on March 15, 2021.  (ECF 58, 60.)  Thereafter, the court repeatedly extended the discovery deadline because of the parties' delays in completing discovery—first to December 31, 2021, and then to January 31, 2022.  (ECF 67-68, 75-76.)  Early in 2022, S.G. reached a settlement with Smith and, after the court approved that settlement, S.G. dismissed her claims against Smith.  (ECF 81, 85, 88, 94.)  While that process was underway, the court repeatedly extended the pretrial order deadlines.  (ECF 83, 87, 91.)

The parties eventually submitted their jointly proposed pretrial order on March 23 and the court convened a pretrial conference on April 6, 2022.  The factual contentions in the parties' proposed pretrial order focused almost exclusively on the facts surrounding Smith's physical assault on H.C.—facts that were largely uncontroverted and unhelpful to resolution of the remaining claims because S.G. had dismissed her claims against Smith and the only remaining claims were S.G.'s failure-to-train and failure-to-supervise claims against SMSD.  So, during the pretrial conference, the court discussed with the parties the need to reframe and refocus the pretrial order on those remaining claims.  Among other things, the court asked S.G. to elaborate on the factual contention that teachers and staff at Bluejacket-Flint did not attempt to calm down H.C. "in a manner familiar to her." (ECF 103-7, at 5.)  S.G.'s counsel explained that he was referring

4

to the manner discussed in H.C.'s Individualized Education Plan ("IEP"), which included a Behavior Intervention Plan ("BIP"). He asserted that SMSD did not train H.C.'s teachers in implementing the IEP/BIP. After addressing other aspects of the proposed pretrial order, the court adjourned the conference and set a deadline for the parties to resubmit a revised draft of the proposed pretrial order that focused their factual and legal contentions on the remaining claims. (ECF 93.)

On April 20, the parties submitted their revised proposed pretrial order ("Revised Draft"). (ECF 103-8.) The Revised Draft included S.G.'s factual contentions about H.C.'s IEP/BIP that SMSD did not "put it in place" before the incident in which Smith abused H.C., including SMSD's failure to train its staff on the BIP provisions regarding specific interventions for H.C. (*Id.* at 6-7.) The Revised Draft also included a material change to S.G.'s Count III negligence claim. Whereas the original draft of the proposed pretrial order asserted that SMSD was negligent in "training and supervision of teachers" (ECF 103-7, at 7), the Revised Draft added "as well as [by failing] to properly supervise H.C. while in its care" (ECF 103-8, at 9).

On April 28, the court re-convened the pretrial conference. During the conference, S.G. again asserted that her claims are based, in part, on SMSD's alleged failure to implement and train school staff on H.C.'s IEP/BIP. (ECF 95.) She also confirmed that she was asserting that SMSD—through Cantwell—was negligent in failing to supervise both Smith *and H.C.* while they were in the library. SMSD objected to the pretrial order including any allegations or legal theories based on the IEP or on an alleged failure to supervise H.C. In support, SMSD directed the court's attention to the pertinent allegations in the complaint and S.G.'s responses to SMSD's Interrogatory Nos. 8 and 9 (discussed below), which required S.G. to identify the facts supporting her failure-to-train and failure-to-supervise claims. After reviewing this record and hearing the

5

parties' initial arguments, the court told the parties it would not include S.G.'s allegations concerning SMSD's alleged failure to implement and train staff on H.C.'s IEP in the pretrial order, absent S.G. being granted leave to amend, because that issue was not properly in the case. In consultation with the parties, the court set a coordinated briefing schedule for S.G.'s anticipated motion for leave to amend the complaint and SMSD's anticipated motion to exclude undisclosed information. (*Id*.) Those motions are now before the court.

## II.   S.G.'s Motion for Leave to Amend to Add Allegations Regarding the IEP

S.G.'s motion seeks leave to add factual contentions to the pretrial order about the IEP, as well as "language alleging that [SMSD's] failure to follow the instructions in the IEP were elements supporting [S.G.'s] § 1983 claim [and] Kansas common law negligence claim." (ECF 98, at 2.) In other words, S.G. does not seek leave to add any claim based on the IEP,[2] but instead seeks leave to add facts and theories about the IEP in order to support her two remaining claims. A plaintiff's attempt to add new theories to the pretrial order is the equivalent of seeking leave to amend the complaint. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Where, as here, the scheduling-order deadline for a motion to amend the pleadings has expired, the party seeking leave to amend must (1) demonstrate good cause for modifying the scheduling order under Federal Rule of Civil Procedure 16(b)(4) and (2) satisfy the standards for amending the pleadings under Federal Rule of Civil Procedure 15(a). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Whether to grant a motion to amend is within the court's sound discretion. *Id.*

---

[2] S.G. does not seek to add a claim for failure to implement the IEP under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400. (ECF 98, at 9-10.)

### A. S.G. Has Not Satisfied the Rule 16(b) Standard for Extending the Scheduling Order Deadline for Motions to Amend the Pleadings

S.G.'s motion does not directly address Rule 16(b), instead skipping to the Rule 15(a) analysis. But, as explained above, S.G. must meet *both* the Rule 16 good-cause standard *and* the Rule 15 standard. The court therefore begins by considering whether S.G. has shown that she could not have met the March 15, 2021 scheduling-order deadline for bringing a motion to amend her pleading if she had acted with diligence.

"Rule 16(b)(4) is arguably more stringent than Rule 15[.]" *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018). It provides that a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). To establish good cause, the moving party must show that it could not have met the motion-to-amend deadline despite diligent efforts. *Husky Ventures*, 911 F.3d at 1020. Because Rule 16(b) requires diligence, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred." *Gorsuch*, 771 F.3d at 1240. On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed." *Id.* If a moving party fails to demonstrate good cause, the court may deny the motion on this basis alone. *See id.* at 1242 (declining to consider Rule 15(a) when there was not good cause under Rule 16(b)); *see also Husky Ventures*, 911 F.3d at 1019 (affirming denial of a motion to amend for lack of good cause).

S.G. knew an IEP existed for H.C. at the time she filed her case (S.G. Depo. Test., ECF 111-1, at 1-2; ECF 103-9, at 2), and presumably knew it included a BIP because she is listed as a "Team Member" on the BIP itself (ECF 101-1, at 21). Indeed, S.G. states that she complained to

Bluejacket-Flint "before H.C. was assaulted, that she needed her IEP in place." (ECF 98, at 1.) Yet her complaint did not mention the IEP/BIP. (ECF 1-1.)

In response to S.G.'s requests for production, SMSD produced the operable IEP with the BIP for the 2018-19 school year on May 19, 2021. (ECF 101-1, at 21-23.) But S.G. did not seek leave to amend at that time. Instead, S.G. served interrogatory responses on June 28 that conspicuously omitted mentioning the IEP/BIP as the basis for her failure-to-train claim. (ECF 103-3, at 2-3.) Specifically, SMSD's Interrogatory No. 8 required S.G. to state the facts supporting her failure-to-train claim, including identifying any improper or additional training SMSD should have provided. (*Id.*) S.G.'s response referred to training on "(1) the steps to be taken when a physical altercation is reported; (2) recognizing unsafe behaviors; (3) appropriate response to student behaviors; (4) general response to crisis situations; and (5) de-escalation tactics." (*Id.*) Likewise, S.G.'s response to SMSD's Interrogatory No. 9 regarding S.G.'s failure-to-supervise claim referred to a violation of district policy, not a violation of H.C.'s IEP/BIP. (*Id.* at 3-4.)

Under these circumstances, the court cannot find that S.G. has shown good cause for waiting so long to seek leave to amend her pleadings to clarify that part of the basis for her failure-to-train claim was SMSD's failure to train staff on H.C.'s individualized IEP/BIP as opposed to any alleged failure to train on the SMSD's generally applicable policies. The court might have been willing to grant S.G. some latitude for an amendment beyond the March 15 deadline because SMSD produced the IEP/BIP on May 19, which was more than two months after that deadline. But the court certainly cannot find that S.G. has established good cause for waiting to seek leave to amend her pleadings until nearly a year after the SMSD produced the IEP/BIP—up to the point where the parties and the court were in the process of formulating the pretrial order.

S.G.'s argument concerning the timeliness of the proposed amendment is discussed in more detail below, but S.G. relies largely on the fact that H.C.'s IEP/BIP was mentioned during various depositions. But that only demonstrates why S.G.'s delay was so egregious. If S.G. wanted to expand her failure-to-train and failure-to-supervise claims to rely on SMSD's failure to implement H.C.'s IEP/BIP, SMSD's Interrogatory Nos. 8 and 9 gave her the opportunity to do so. If S.G. had simply answered those interrogatories—served just over a month after SMSD produced H.C.'s IEP/BIP—to set forth her allegation that the SMSD should have trained staff to follow the IEP/BIP, then SMSD would have had fair notice that it needed to pursue discovery and work toward developing defenses on this aspect of the claim, including being prepared to ask deponents meaningful questions about it. But S.G. did not do this. This does not show that S.G. was diligent in seeking leave to amend. It establishes the opposite.

Accordingly, S.G. has not met the Rule 16(b) standard for moving to amend the pleadings at such a late date, and the court denies the motion on that basis.

**B.     S.G. Has Not Satisfied Rule 15(a)'s Standard for Amendment of Pleadings**

Rule 15(a) provides that once a responsive pleading has been filed and 21 days have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Nonetheless, a court may deny leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alterations

9

in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, SMSD argues S.G.'s motion should be denied based on undue delay, undue prejudice, and futility. The court addresses each of these arguments in turn and denies S.G.'s motion on the grounds of undue delay and the potential undue prejudice to SMSD, but not on futility grounds.

      **1.    Undue Delay**

While "[l]ateness does not of itself justify the denial of the amendment," a party that "delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." *Minter*, 451 F.3d at 1205 (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975), and 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1488 (2d ed. 1990)). "[P]rotracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.* (quotation omitted). In evaluating what constitutes undue delay sufficient to deny a motion to amend, the district court must focus "primarily on the reasons for the delay." *Id.* at 1206. Denial is appropriate where the party seeking amendment "has no adequate explanation for the delay." *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993); *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (noting that courts have "denied leave to amend in situations where the moving party cannot demonstrate excusable neglect," including "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend").

As discussed above, S.G. had access to the operative IEP and learned of the BIP's specific provisions by May 19, 2021, at the latest. But she did not seek leave to assert allegations about the IEP until nearly a year later, after discovery was closed. S.G. gives no explanation as to why she waited so long to assert her allegation that SMSD's failure to train its staff on the IEP's

10

provisions supports her two remaining claims. Rather, S.G. asserts that the "IEP has been thoroughly evaluated and discussed throughout discovery," and not sprung on SMSD at the last minute. (ECF 98, at 2.) But that misses the point. Discussing the "IEP and [SMSD's] failure to implement it" (*Id.* at 7) is wholly different from asserting claims based on it.

S.G. suggests that she did not include allegations in her complaint tying SMSD's liability (at least in some respect) to its actions related to the IEP because, "[a]t the time of filing this matter, it was not clear exactly when [SMSD] received [HC']s 2018-19 IEP file from her prior school." (*Id.* at 2.) But S.G. concedes that, "[a]fter the assault, S.G. reached out to [H.C.'s] prior school and, through a voicemail that was subsequently produced by Plaintiff, they confirmed H.C.'s records were sent to [Bluejacket-Flint]" the day before H.C. began attending. (*Id.*) S.G. does not assert the voicemail was received after the March 15 amendment deadline, nor does she explain why she did not move to amend immediately upon receiving this information that she deems necessary to support the allegations she now proposes. Thus, the court places little stock in this argument.

Throughout discovery, S.G. never gave any indication that she was relying on the IEP to support her claims. First, in disclosing the documents she believed "to contain information that [she] may use to support [her] claims or defenses" pursuant to Rule 26(a)(1)(B), S.G. did not mention the IEP. (ECF 103-1, at 3-4; 103-2, at 3-4.) Then, S.G.'s response to SMSD's contention Interrogatory No. 8 on June 28, 2021, again said nothing about the IEP, even though SMSD produced the IEP to S.G. more than a month earlier. (ECF 103-3, at 2-3.) And when SMSD asked S.G. in document requests to provide documents that support each of her claims, S.G. responded by producing other documents, but not the IEP. (*See* ECF 103-4, at 2-4.) Finally, S.G. let the deadline for supplementing her Rule 26(a) disclosures with "all witnesses and exhibits that

11

probably or even might be used at trial" pass on December 22, 2021, without mentioning the IEP. (*See* ECF 34, at 4 (setting deadline at 40 days before the discovery deadline).) In short, nothing in S.G.'s pleading or discovery behavior reasonably could be viewed as giving SMSD notice that she was premising either her § 1983 claim or negligence claim on an alleged failure to train teachers about information contained in H.C.'s IEP. It bears noting again that S.G. is not pursuing an IDEA claim against SMSD for any alleged failure to implement the IEP or BIP therein.

This case is now in its twilight—long after the March 15, 2021, deadline for motions to amend and the January 31, 2022, deadline to complete discovery. Because S.G. has no adequate explanation for her delay in seeking an amendment that could have been asserted more than the ten months before the issue came up during the pretrial conference, the court denies S.G.'s motion for undue delay in seeking leave to amend. *See Minter*, 451 F.3d at 1196 ("Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target[]. . . ." (internal quotation and citation omitted)).

### 2. Undue Prejudice

The most important factor in considering a motion to amend is "whether the amendment would prejudice the nonmoving party." *Id.* at 1207. "Courts typically find prejudice only when the amendment unfairly affects the [opposing parties] 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)); *see also Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) ("In gauging prejudice, we consider, among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial . . . .'" (quotation omitted)). Where a proposed amendment would delay the resolution of the case, courts have found prejudice. *See, e.g., Ruotolo*, 514 F.3d at 192 (noting that a court considers "significant[] delay [in] the resolution

of the dispute" when evaluating prejudice (quotation omitted)); *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1231-32 (D. Kan. 2002) (finding prejudice where "expansive and substantial" discovery would be necessary and would "unduly delay the resolution of [the] long-pending case").

SMSD asserts it would be severely prejudiced if S.G. is permitted to add new contentions about the IEP in the pretrial order, which becomes the operative pleading in the case. The court agrees. As noted by SMSD, it has had no opportunity to assert affirmative defenses or bring early motions under Federal Rule of Civil Procedure 12 challenging the contentions. Because S.G. did not seek leave to amend until after discovery closed, SMSD was not incentivized to fully explore in discovery the elements of H.C.'s IEP and, more specifically, the BIP and the circumstances surrounding SMSD's alleged failure to train its staff to implement the same. Although S.G. notes that five of seven fact witnesses were asked about the IEP by one side or the other, this is a non sequitur. As explained above, general questions about the existence of the IEP are materially different than specific questions focused on SMSD's actions or inactions with respect to training teachers in helping H.C. in a manner prescribed by the IEP. SMSD also notes it has not had the opportunity to identify potential expert witnesses to discuss services needed under the IEP and whether training teachers in those service would have prevented Smith's abuse of H.C.

This case was already protracted for too long via multiple extensions to case-management deadlines. Discovery has now been closed for months and the case is otherwise ready for dispositive motions. Allowing S.G.'s proposed amendment would require the court to reopen discovery and further delay the resolution of the case, as well as require SMSD to expend additional resources on discovery and, potentially, on motion briefing. This would unduly prejudice SMSD. Accordingly, S.G's motion is also denied on this basis.

### 3. Futility

"A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In considering whether a proposed amendment is futile, the court uses the same analysis that governs a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim. *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases); *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158 (D. Kan. 2000); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 199 (5th Cir. 2017). To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the court will deny an amendment based on futility when, accepting the well-pleaded allegations of the proposed amended complaint as true and construing them in the light most favorable to the plaintiff, the court determines the plaintiff has not presented a plausible claim. *Little v. Portfolio Recovery Assocs., LLC*, 548 F. App'x 514, 515 (10th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). "The party opposing the amendment has the burden of showing the proposed amendment is futile." *Tran v. Cnty. of Douglas*, No. 21-2310-KHV, 2022 WL 1102653, at *2 (D. Kan. Apr. 13, 2022).

S.G. asserts that she "should be entitled to use the . . . IEP to support her § 1983 and negligence claim" because it "is additional evidence for the jury to evaluate and consider in terms of what notice [SMSD] had of the extra need and manner of care [H.C.] required as well as the procedures that were in place to care for her." (ECF 98, at 9-11.) SMSD responds that S.G. does not tie this argument "to the elements of either of her claims nor does she present any legal authority or argument to suggest how anything in the IEP would have prevented [Smith's] criminal

14

actions." (ECF 111, at 4.) For these reasons, SMSD argues, the proposed amendments are futile. (*Id.*)

It is a close call whether S.G.'s proposed allegations about the IEP and about SMSD's failure to train teachers on the procedures in the IEP would be futile if amendment were allowed. But ultimately, the court concludes SMSD has not met its burden in this regard. SMSD has not presented any authority or cogent argument indicating that plaintiffs may not use a student's IEP to support a § 1983 claim or negligence claim based on failure to train. SMSD initially argued that, under *Padilla v. School District No. 1, City and County of Denver*, 233 F.3d 1268 (10th Cir. 2000), a § 1983 claim could not be premised on an alleged IDEA violation for failure to follow an IEP, but that argument became moot when S.G. disavowed asserting an IDEA-based claim. (ECF 98, at 9-10; ECF 111, at 4.) Without authority to the contrary before it, the court cannot conclude that S.G.'s proposed IEP allegations could not help support her two current claims. However, as noted above, leave to amend is nonetheless denied based on S.G.'s undue delay and the undue prejudice that the proposed amendment potentially would cause SMSD.

**C.     Conclusion**

S.G.'s motion to amend is untimely under the scheduling order, and she has not demonstrated good cause to extend the deadlines to amend the pleadings to accommodate the belated amendment. S.G. also unduly delayed in moving to amend. She could have brought her proposed IEP-based allegations at the inception of this case or, at the very least, filed the motion or expanded them by way of her response to SMSD's interrogatories approximately a year ago, while discovery was still ongoing and before the parties engaged in the time and expense of depositions. But she did not, and she has no adequate explanation for his delay. SMSD would be unduly prejudiced by the proposed amendment because it had no motive or opportunity to conduct

15

discovery on allegations that it failed to train and supervise teachers in the handling of H.C.'s IEP. Further, reopening discovery would prejudice SMSD by further delaying resolution of the case and subjecting SMSD to the time and expense of additional discovery. S.G.'s motion for leave to amend the complaint and pretrial order (ECF 97) therefore is denied.

### III.     SMSD's Motion to Exclude Undisclosed Information from the Pretrial Order

On the flip side of the issue, SMSD moves the court under Federal Rule of Civil Procedure 37(c) to exclude legal theories and related factual contentions from the pretrial order that S.G. did not include in her complaint or disclose in response to discovery requests. SMSD "specifically objects to any contentions by [S.G.] that her claims in this case are based on any failure to implement or follow [the IEP] or any [BIP] included in her IEP or any failure to train staff concerning her IEP or BIP and further objects to any claim for failure to supervise [H.C.]" (ECF 102, at 1.)

Rule 37(c) generally precludes a party from using information as evidence that the party has not identified in discovery as required by Rule 26(e). Rule 26(e) requires a party to supplement its Rule 26(a) initial disclosures and any discovery responses it has made if the party later learns the disclosures or responses are incorrect and the additional or corrective information has not otherwise been made known to the other parties through the discovery process.

The court considers, in turn, the two categories of information that SMSD moves to exclude and concludes that the motion should be granted as to information about SMSD's failure to implement or train staff on H.C.'s IEP/BIP, and should be denied as to information about SMSD's supervision of H.C.

16

A.   **Contentions Based on SMSD's Failure to Implement or Train Staff on H.C.'s IEP**

SMSD first asks the court to preclude S.G. from relying on information about SMSD's alleged failure to implement H.C.'s IEP or to train staff about the IEP. This request is largely covered by the discussion above. As noted, S.G. did not mention the IEP in her initial disclosures, in her response to contention interrogatories, or in response to document requests; and she did not supplement her initial disclosures or responses after learning more about the IEP through discovery.

S.G. asserts that the IEP and information about SMSD's "failures in terms of following a plan that its own staff admits was in place" was in SMSD's possession, such that precluding it under Rule 37(c) "would be an unduly harsh penalty." (ECF 109, at 1.) She notes that SMSD's initial disclosures identified "H.C.'s student records" as documents it would use to support its claims or defenses. (ECF 109-1, at 5.) As discussed above, however, the issue is not whether SMSD knew H.C. had an IEP and knew its own actions with respect to training (or not training) staff about that IEP. Rather, the relevant inquiry is whether S.G. identified such information as a basis of any theory of recovery. To that end, S.G. never gave any indication throughout discovery that she was relying on the IEP to support her claims. Most significantly, she violated Rule 26(e) when she failed to supplement her response to SMSD's contention Interrogatory No. 8 with this information. Based on these failures and the other considerations discussed herein, the court finds that Rule 37(c) counsels against allowing S.G. to include IEP-based factual contentions and legal theories in the pretrial order. SMSD's motion to exclude information about SMSD's failure to implement or train staff on H.C.'s IEP is therefore granted.

### B.     Excluding Theory that SMSD Failed to Supervise H.C.

SMSD next moves the court to preclude from the pretrial order language that S.G. included in the Revised Draft asserting that SMSD was negligent in failing "to properly supervise H.C. while in its care." (ECF 103-8, at 9.) S.G.'s theory in this regard is that Cantwell had a duty to help de-escalate the situation between Smith and H.C. in the library.

As mentioned above, Count III of the complaint alleges that SMSD was negligent in failing to adequately train and supervise teachers. (*See* ECF 1-1, at 11-12.) It does not specifically reference a failure to supervise H.C. SMSD argues the court therefore should preclude S.G. from asserting a negligent-supervision-of-H.C. theory, particularly given that S.G.'s motion for leave to amend her complaint did not seek leave to add such a theory. S.G. responds that her complaint was adequately pleaded to give SMSD fair notice that its failure to supervise H.C. was part of her negligence claim, and this theory was fully flushed out in discovery.

The court finds this theory is fairly a part of the case and therefore declines to exclude supporting language from the pretrial order. Although the complaint is not a model of clarity regarding S.G.'s failure-to-supervise claim, Count III does allege that because SMSD failed to "adequately train and supervise teachers, Smith had free reign to assault H.C. while it was completely ignored by staff . . . ." (ECF 1-1 ¶ 92.) Perhaps recognizing the nebulous nature of this claim, SMSD served S.G. with contention Interrogatory No. 9, which required S.G. to "state all facts and circumstances upon which you rely for your allegation contained within the Complaint that [SMSD] failed to properly supervise its employees, specifically identifying in your answer the improper supervision which was provided to such employees. . . ." (ECF 103-3, at 3.) S.G. responded, in relevant part, that Cantwell saw Smith physically restraining H.C., but "remov[ed] herself from the situation rather than providing the additional adult supervision *to adequately*

*address the events*." (*Id.* at 3-4 (emphasis added).) This response can be read to cover S.G.'s theory that Cantwell had a duty to supervise everyone involved in the incident—Smith and H.C. alike—because it occurred while she was on duty as the school librarian. The record does not reflect that SMSD ever asked S.G. to further clarify its negligent-failure-to-supervise claim.

Other discovery in the case is consistent with interpreting the failure-to-supervise claim to include S.G.'s theory that Cantwell should have intervened to help supervise H.C., rather than turning her back to the situation. First, S.G.'s initial disclosures identified Cantwell as a potential witness who could provide "relevant information regarding [SMSD's] policies and procedures for supervision and care of children . . . ." (ECF 103-1, at 2.) Then, during Cantwell's deposition on November 17, 2021, S.G.'s attorney introduced as an exhibit and questioned Cantwell about an internal SMSD document in which an SMSD administrator expressed concern that Cantwell was aware that Smith was in a heated exchange with H.C., but did "not come over to offer assistance or help deescalate the situation . . . . Contrary to this, she continue[d] to further distance from a situation in which a student is clearly in need of assistance." (ECF 109-3, at 3 (quoting ECF 110-1, at 2-3).) Cantwell admitted that she did not go over to Smith and H.C. and that she did not "help de-escalate the situation." (ECF 109-3, at 3.) Finally, S.G.'s attorney also introduced and showed Cantwell a document identified as a "Summary of Concern," which summarized a meeting between Cantwell and the Bluejacket-Flint principal. The document included a statement that "[i]t is the expectation that whenever a teacher is in a challenging situation, while students are under your care or transitioning, you stay present to either supervise their class or assist with the student that is experiencing challenging behavior." (ECF 110-2.)

All of these considerations gave SMSD fair notice about S.G.'s theory that Cantwell should have intervened to supervise H.C. The court therefore finds that S.G. adequately disclosed this

theory such that Rule 37(c) does not preclude its use.  Including S.G.'s theory in this regard also accords with the judiciary's "strong preference for resolving cases on their merits whenever possible."  *Lee v. Max Int'l, LLC,* 638 F.3d 1318, 1319 (10th Cir. 2011).  Accordingly, the court denies SMSD's request to preclude this negligence theory from the pretrial order.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Leave to Amend the Complaint and Pretrial Order to Conform to the Evidence Discussed Throughout Discovery (ECF 97) is denied and Defendant's Motion Objecting to Plaintiff's Inclusion of Certain Contentions and Claims in the Pretrial Order (ECF 102) is granted in part and denied in part, as discussed above.

IT IS FURTHER ORDERED that the Pretrial Order entered concurrently with this Memorandum and Order will be the operative pleading in the case.  The dispositive motion deadline, as re-set therein, is **July 14, 2022**.

IT IS SO ORDERED.

Dated June 30, 2022, at Kansas City, Kansas.

 s/ Angel D. Mitchell
Angel D. Mitchell
U. S. Magistrate Judge