### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| S.G. as guardian of H.C.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-2078-JAR-ADM |
| v. ) | |
| ) | |
| SHAWNEE MISSION UNIFIED ) | |
| SCHOOL DISTRICT NO. 512,[2] ) | |
| ) | |
| Defendant. ) | |

## PRETRIAL ORDER

On April 6, 2022, U.S. Magistrate Judge Angel D. Mitchell conducted a pretrial conference in this case, by phone. After circulating revised drafts of the pretrial order, the court reconvened the pretrial conference on April 28, 2022, by videoconference. Plaintiff S.G. as guardian of H.C. ("S.G.") appeared through counsel Daniel R. Zmijewski. Defendant Unified School District No. 512, Johnson County, Kansas ("USD No. 512") appeared through counsel Gregory P. Goheen.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. FED. R. CIV. P. 16(d) & (e); D. KAN. RULE 16.2(b).

---

[1] This is a representative action on behalf of a minor H.C. by her mother S.G. under Federal Rule of Civil Procedure 17(c)(2). In connection with the pretrial conference, counsel for Plaintiff clarified that S.G. is not pursuing any individual claims. The Clerk is therefore directed to update the case docket accordingly, as reflected above.

[2] S.G. originally also brought claims against Heather Ousley ("Ousley"), Teddi Pendland ("Pendland"), and Crystal Smith ("Smith"). S.G. voluntarily dismissed her claims against Ousley and Pendland on March 31, 2020, and against Smith on April 8, 2022. (ECF 19, 94.) Accordingly, USD No. 512 is the only remaining defendant.

**1)     PRELIMINARY MATTERS.**

    **a)     Subject-Matter Jurisdiction.**  Subject-matter jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367 and is disputed only to the extent that S.G.'s state law negligence claim exceeds the scope of the notice provided USD No. 512 under the Kansas Tort Claims Act, KAN. STAT. ANN. § 70-6101 *et seq*. ("KTCA").

    **b)     Personal Jurisdiction.**  The court's personal jurisdiction over the parties is not disputed.

    **c)     Venue.**  Venue in this court is not disputed.

    **d)     Governing Law.**  Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are generally governed by the following law:

        i.   42 U.S.C. § 1983 and the Due Process Clause of the 14th Amendment to the U.S. Constitution for S.G.'s claims that H.C.'s liberty interest in bodily integrity was violated by USD No. 512's failure to train and supervise its employees; and

        ii.  The Kansas Tort Claims Act, KAN. STAT. ANN. § 75-6101 *et seq.*, KAN. STAT. ANN. §§ 12-105a & -105b, and Kansas common law for S.G.'s negligence claim against USD No. 512.

**2)     STIPULATIONS.**

    **a)     The following facts are stipulated:**

        i.   USD No. 512 is a unified school district and governmental subdivision of the State of Kansas, duly organized and existing pursuant to Article 6, § 5 of the Constitution of the State of Kansas and KAN. STAT. ANN. § 72-1131 *et seq.*

        ii.  In February of 2019, H.C. transferred to USD No. 512 from a different school district.

        iii. H.C. enrolled in USD No. 512 and began attending Bluejacket-Flint Elementary School as a kindergarten student on February 6, 2019.

        iv.  Crystal Smith ("Smith") was H.C.'s teacher at Bluejacket-Flint.

   v.  On February 21, 2019, Smith physically removed H.C. from a library bookshelf and kicked her.

   vi.  On February 22, 2019, USD No. 512 removed Smith from her teaching duties as a result of her conduct toward H.C.

   vii.  USD No. 512 terminated Smith's employment effective March 25, 2019, as a result of her conduct toward H.C.

   viii.  As a result of Smith's conduct toward H.C. on February 21, 2019, Smith was charged with misdemeanor battery in Johnson County District Court and she ultimately pleaded guilty to one count of battery, a class B person misdemeanor.

  **b)**  The parties stipulate that, for purposes of any summary judgment motions and trial, all exhibits marked and/or used during depositions and all documents produced in discovery, including documents produced in response to any authorization or release of records or subpoenas issued to third parties, meet the standards for foundation and authenticity and that copies may be used in lieu of originals. The parties reserve their rights to object to the admissibility in summary judgment motions or at trial on any other grounds.

**3)**  **FACTUAL CONTENTIONS.**

  **a)**  **Plaintiff S.G.'s Contentions.**

On February 21, 2019, H.C. went to the library with her class. Towards the end of library time, H.C. could not find a drawing she created and became concerned and upset. She searched around the library while the librarian, Ms. Cantwell ("Cantwell"), watched her. The students were lining up and Smith came into the library to take the students back to class. When Smith entered the library, she directed H.C. to leave the line and stand by the book stack. H.C. hid from Smith. Cantwell was speaking with Smith and was aware of H.C. being upset and hiding from the adults. Cantwell knew a heated exchange was beginning between Smith and H.C. in which H.C. needed help. But Cantwell walked away from Smith and H.C. toward her desk instead of remaining to help and deescalate the situation. Meanwhile, Smith physically grabbed and kicked H.C.

Smith's actions violated USD No. 512's policies and procedures related to student supervision. For example, USD No. 512's "GAAF" (Emergency Safety Intervention) policy requires that all staff members be trained on the use of positive behavioral intervention strategies, de-escalation techniques, and prevention techniques. Yet USD No. 512 never even told Smith about this policy, let alone provided her with training on it.

Cantwell failed to remain with Smith to comfort H.C. Instead, Cantwell walked away from Smith and H.C., despite H.C.'s need for help. In doing so, Cantwell also violated USD No. 512's GAAF policy. USD No. 512 had not properly trained Cantwell on intervention and de-escalation tactics as per this policy. Furthermore, Cantwell easily could see Smith physically redirecting/restraining H.C. and yet she removed herself from the situation rather than fulfilling her obligation to supervise the students in her care, which including protecting those students. Cantwell failed to supervise Smith and H.C. so as to prevent H.C. from being injured.

After Smith physically assaulted H.C., H.C. was taken to Resource Teacher Kaitlin Barnard's ("Barnard") room to calm down. After H.C. calmed down, Barnard took H.C. back to Smith's classroom. By doing so, Barnard violated USD No. 512's policy by allowing H.S. to return to Smith's classroom after H.C. made an allegation that Smith abused her.

USD No. 512 did not contact H.C.'s parents to notify them about these events. This violated the GAAF policy, which requires the school to contact parents the same day to inform them of the intervention. USD No. 512 also did not report the incident to the Department for Children and Families, as required by USD No. 512's "GAAD" (Child Abuse Investigation) policy. Instead, when H.C.'s mother picked her up from school, H.C. told her mother about the assault. H.C.'s mother immediately returned to the school to request information about the event. Multiple staff claimed to be unaware of the event and Smith denied it. The GAAF also mandates

that the school provide the parents with documentation of the intervention the following school day explaining the events that led up to the intervention, all steps taken during the intervention along with all people present and significant explanation regarding the facts of the event. Yet it was not until USD No. 512 reviewed the video, at H.C.'s mother's urging, that USD No. 512 confirmed the event and then subsequently followed its own protocols and drafted a notice to H.C.'s mother documenting that an Emergency Safety Prevention was used against H.C. via the use of "restraint," which USD No. 12 has subsequently retracted.

      **b)**      **Defendant USD No. 512's Contentions.**

USD No. 512 employs teachers who are licensed and trained to instruct and supervise students. On February 21, 2019, Smith physically removed H.C. from a library bookshelf and kicked her. Smith's actions violated USD No. 512's policies prohibiting physical discipline or assault, as well as state law, as evidenced by the fact that Smith was convicted of assault. After USD No. 512 investigated the incident, it removed Smith from her teaching duties on February 22 and, consistent with her due process rights, terminated her employment effective March 25.

USD No. 512 could not foresee that Smith, a licensed teacher, would engage in the conduct that occurred on February 21, 2019. USD No. 512 was not aware of any prior conduct of a similar nature by Smith. Her conduct was outside the scope of her employment or duties as a teacher. Smith's actions against H.C. were unexpected and took place in a short amount of time where no other school official could intervene or prevent her actions from taking place. Cantwell had no reason to suspect that Smith take the actions she did against H.C., did not see those actions take place, and had no opportunity to intervene even if she had seen Smith's actions. USD No. 512 appropriately trains and supervises its employees. USD No. 512 acted reasonably, and without

deliberate indifference, in addressing this incident. USD No. 512 reported the incident to appropriate authorities, including law enforcement for further investigation.

**4)  LEGAL CLAIMS AND DEFENSES.**

   **a)  Plaintiff S.G.'s Legal Claims.**[3]

S.G. asserts that she is entitled to recover upon the following theories:

   i. <u>Count II</u> - Violation of H.C.'s liberty interest in bodily integrity under the due process clause of the 14th Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983 in failing to train Smith on USD No. 512's; in failing to train Cantwell on USD No. 512's policies; in Cantwell's failure to supervise the interaction between Smith and H.C. so as to protect H.C. while she was in Cantwell's care; and in failing to train Barnard on USD No. 512's policies.

   ii. <u>Count III</u> - Negligence by failing to exercise reasonable care in supervising and training teachers in the proper handling and reporting of situations involving de-escalation as well as a failure by USD No. 512 to properly supervise H.C. while in its care.

   **b)  Defendant USD No. 512's Defenses.**

Defendant U.S.D. No. 512 asserts the following defenses to all claims:

   i. USD No. 512's alleged failure to train or supervise Smith (or any of its employees) was not the cause of the actions complained of by S.G., nor was it the proximate cause of S.G.'s claimed damages. Smith (or any other employee) already knew it was wrong to engage in the complained of actions, so any training on this topic by USD No. 512 would have been redundant of the knowledge that Smith (and other employees) already possessed.

   ii. S.G. failed to mitigate damages to the extent that her pain and suffering was exacerbated by her failure to return to school and take advantage of treatment opportunities.

   iii. S.G.'s claimed emotional distress damages are based on pure speculation and are therefore not recoverable.

   iv. To the extent S.G.'s claims against USD No. 512 are premised on any act or omission of Smith, S.G.'s claims are barred, offset or otherwise reduced by S.G.'s settlement with Smith.

---

[3] The following claims in the Petition (ECF 1-1) are no longer at issue: Count I, Count III against Pendland, and Count IV.

### § 1983 Claim

In addition, USD No. 512 asserts the following defenses to Plaintiff's § 1983 claim:

  v. USD No. 512 has no respondeat superior or vicarious liability under § 1983 for the acts or omissions of Smith (or any of its employees). Furthermore, it has no municipal policy or custom that violated H.C.'s rights.

  vi. Smith's pertinent actions were not taken under color of state law under § 1983 because she was not acting within the scope of her employment.

### State Law Negligence Claim

In addition, USD No. 512 asserts the following defenses to Plaintiff's negligence claim:

  vii. S.G.'s negligence claim cannot exceed the notice provided USD No. 512 pursuant to the KTCA, KAN. STAT. ANN. § 12-105(b). To the extent that S.G. seeks to pursue a claim that exceeds the scope of that notice, S.G. lacks standing to pursue, and the court lacks subject matter jurisdiction over, those aspects of her claim.

  viii. USD No. 512 owed no duty or obligation to H.C. and other students who have a statutory right to state-furnished education to train or supervise teachers on the proper handling and reporting of student care and de-escalation in intervention situations under the public duty doctrine that is alleged to have been breached. Nor did USD No. 512 owe any special duty to H.C. that is alleged to have been breached.

  ix. USD No. 512 denies that Smith was acting within the course and scope of her agency or employment.

  x. S.G.'s claims are barred or reduced, in whole or in part, by the KCTA, KAN. STAT. ANN. §§ 75-6101 to 75-6115. Specifically:

   a. USD No. 512 is not liable for any failure to adopt or enforce any written personnel policy, KAN. STAT. ANN. § 75-6104(d);

   b. USD No. 512 is not liable for any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by any of its employees, KAN. STAT. ANN. § 75-6104(e);

   c. USD No. 512 is not liable for failure to provide police or fire protection under KAN. STAT. ANN. § 75-6104(n), which Kansas courts have recognized as the codified version of the public duty doctrine; and

   d. USD No. 512 is not liable for damages resulting from conduct of Smith because of settlement, KAN. STAT. ANN. § 75-6106.

     xi.    S.G.'s damages are limited by the $500,000 KCTA statutory cap. KAN. STAT. ANN. § 75-6105.

     xii.    S.G.'s recovery is barred, in whole or in part, by Plaintiff's contributory negligence and comparative fault, and/or the negligence or fault of others.

     xiii.    S.G.'s claim for damages for emotional distress are barred because of the lack of physical injury.

**5) DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

    a.    S.G. seeks damages for the pain and suffering H.C. endured as a result of the physical trauma inflicted. Depending upon the evidence presented to the jury, Plaintiff may ask for up to $1,000,000 in damages.

    b.    S.G. also seeks her costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

    c.    USD No. 512 seeks its defense costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988(b), including reasonable attorneys' fees, because this action is frivolous and insubstantial, having been filed without probable cause or reasonable investigation.

**6) AMENDMENTS TO PLEADINGS.**

None.

**7) DISCOVERY.**

Discovery is complete.

Unopposed discovery may continue after the deadline to complete discovery so long as it does not delay the briefing of or ruling on dispositive motions or other pretrial preparations. Although discovery may be conducted beyond the deadline to complete discovery if all parties are in agreement to do so, under these circumstances the court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8) MOTIONS.**

    **a)    Pending Motions.**

None.

  b) **Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

  i. S.G. intends to file motions in limine.

  ii. USD No. 512 intends to file a summary judgment motion, a motion to exclude expert testimony, and motions in limine.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **July 14, 2022**. The parties should follow the summary-judgment guidelines available on the court's website:

 http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf

Consistent with the scheduling order filed earlier in this case, the arguments and authorities' section of briefs or memoranda must not exceed 30 pages, absent an order of the court.

  c) **Motions Regarding Expert Testimony.** All motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, must be filed no later than 40 days before trial.

9) **TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **March 14, 2023, at 9:00 a.m., in Kansas City, Kansas.** This case will be tried by jury. Trial is expected to take approximately five (5) days. The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial. If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition

testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

IT IS SO ORDERED.

Dated June 30, 2022, at Kansas City, Kansas.

                                       s/ Angel D. Mitchell
                                      The Honorable Angel D. Mitchell
                                      U. S. Magistrate Judge